# 23-7038

*To Be Argued By:*
ALEXANDRA A.E. SHAPIRO

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

UNITED STATES OF AMERICA,

*Appellee,*

—against—

NATHANIEL CHASTAIN, AKA SEALED DEFENDANT 1,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-APPELLANT

DAVID I. MILLER
DANIEL P. FILOR
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
(212) 801-9200

ALEXANDRA A.E. SHAPIRO
JASON A. DRISCOLL
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas,
  17th Floor
New York, New York 10036
(212) 257-4880

*Attorneys for Defendant-Appellant*

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION................................................................................1

ARGUMENT ....................................................................................1

I.    CHASTAIN IS ENTITLED TO ACQUITTAL ...........................................1

     A.    The Evidence Was Insufficient Because The Featured NFT
           Information Had No Commercial Value To OpenSea .........................2

          1.    To Constitute "Property," Information Must
              Have Economic Value................................................2

          2.    The Featured NFT Information Lacked
              Commercial Value..................................................13

     B.    The Evidence Was Insufficient Because OpenSea
           Did Not Take Affirmative Steps To Keep
           The Information Confidential .........................................15

     C.    The Government Failed To Prove Intent To Defraud .......................17

II.    FLAWED JURY INSTRUCTIONS REQUIRE A NEW TRIAL ...............18

     A.    The District Court Erroneously Instructed The Jury
           That Commercial Value Was Not Required ..............................18

          1.    Chastain Preserved His Objection ...............................18

          2.    The Property Instruction Was Erroneous .................21

     B.    The District Court's Response To Jury Note Three
           Misstated The Law .................................................21

     C.    The Instructions Misstated The Law Of Fraud..............................24

          1.    Chastain Preserved His Objection ...............................24

2.    The Fraud Instruction Was Erroneous.....................................24

D.    Omitting Materiality Was Plain Error ................................26

III.    THE ERRONEOUS EXCLUSION OF CRITICAL DEFENSE
EVIDENCE REQUIRES A NEW TRIAL ..................................27

A.    Evidence That Chastain's Peers Did Not Believe
The Information Was Confidential Was
Erroneously Excluded..........................................................28

1.    The Evidence Was Relevant.....................................28

2.    The Evidence Was Not Improper Lay Opinion.......................30

B.    The Redline Showing OpenSea Made No
Material Changes To The Clerky Template
Was Erroneously Excluded..................................................31

C.    Evidence That OpenSea's CEO Did Not View Similar
Information As OpenSea's "Property" Was
Erroneously Excluded..........................................................32

CONCLUSION ....................................................................................33

# TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*Belt v. United States*,
868 F.2d 1208 (11th Cir. 1989) ........................................................... 14

*Cameron v. City of New York*,
598 F.3d 50 (2d Cir. 2010) ................................................................... 30

*Carpenter v. United States*,
484 U.S. 19 (1987) ....................................................................... passim

*Chiarella v. United States*,
445 U.S. 222 (1980) ............................................................................ 13

*Ciminelli v. United States*,
598 U.S. 306 (2023) ...................................................................... passim

*Cleveland v. United States*,
531 U.S. 12 (2000) .................................................................. 3, 15, 25

*Gregory v. United States*,
253 F.2d 104 (5th Cir. 1958) ............................................................... 25

*Kelly v. United States*,
590 U.S. 391 (2020) .............................................................. 9, 12, 14, 25

*Koons v. United States*,
518 U.S. 81 (1996) .............................................................................. 28

*McNally v. United States*,
483 U.S. 350 (1987) ........................................................... 4, 11, 12, 25

*Neder v. United States*,
527 U.S. 1 (1999) .......................................................................... 26, 27

*Percoco v. United States*,
598 U.S. 319 (2023) .............................................................................. 3

*Phillips v. Washington Legal Foundation*,
    524 U.S. 156 (1998) ............................................................... 9

*Skilling v. United States*,
    561 U.S. 358 (2010) ............................................................. 11

*U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*,
    822 F.3d 650 (2d Cir. 2016) ................................................. 27

*United States v. Blaszczak*,
    56 F.4th 230 (2d Cir. 2022) ........................................... 4, 6, 9

*United States v. Blaszczak*,
    947 F.3d 19 (2d Cir. 2019), *vacated*, 141 S. Ct. 1040 (2021) ............................. 3

*United States v. Calk*,
    87 F.4th 164 (2d Cir. 2023) ................................................... 7

*United States v. Czubinski*,
    106 F.3d 1069 (1st Cir. 1997) .............................................. 16

*United States v. D'Amato*,
    39 F.3d 1249 (2d Cir. 1994) ................................................. 18

*United States v. Dinome*,
    86 F.3d 277 (2d Cir. 1996) ................................................... 20

*United States v. Dove*,
    916 F.2d 41 (2d Cir. 1990) ................................................... 24

*United States v. Gatto*,
    986 F.3d 104 (2d Cir. 2021) ................................................. 25

*United States v. Girard*,
    601 F.2d 69 (2d Cir. 1979) ..................................................... 6

*United States v. Goldblatt*,
    813 F.2d 619 (3d Cir. 1987) ................................................. 25

*United States v. Gramins*,
    939 F.3d 429 (2d Cir. 2019) ................................................. 28

*United States v. Grossman*,
   843 F.2d 78 (2d Cir. 1988) ....................................................................7

*United States v. Hager*,
   879 F.3d 550 (5th Cir. 2018) ........................................................14, 15

*United States v. Hassan*,
   578 F.3d 108 (2d Cir. 2008) ................................................................20

*United States v. Hedaithy*,
   392 F.3d 580 (3d Cir. 2004) ................................................................10

*United States v. Hoy*,
   137 F.3d 726 (2d Cir. 1998) ..................................................................2

*United States v. Khalupsky*,
   5 F.4th 279 (2d Cir. 2021) ...................................................................13

*United States v. Leahy*,
   445 F.3d 634 (3d Cir. 2006) ................................................................25

*United States v. Litvak*,
   808 F.3d 160 (2d Cir. 2015) ................................................................28

*United States v. Lorenzo*,
   534 F.3d 153 (2d Cir. 2008) ................................................................17

*United States v. Mahaffy*,
   693 F.3d 113 (2d Cir. 2012) .........................................................passim

*United States v. Martin*,
   228 F.3d 1 (1st Cir. 2000) ...................................................................16

*United States v. Masotto*,
   73 F.3d 1233 (2d Cir. 1996) ................................................................20

*United States v. Miller*,
   997 F.2d 1010 (2d Cir. 1993) ..............................................................15

*United States v. Mittelstaedt*,
   31 F.3d 1208 (2d Cir. 1994). ...............................................................11

*United States v. Newman,*
    664 F.2d 12 (2d Cir. 1981) ................................................................. 13

*United States v. Nouri,*
    711 F.3d 129 (2d Cir. 2013) ............................................................... 27

*United States v. O'Hagan,*
    521 U.S. 642 (1997) ............................................................... 8, 12, 27

*United States v. Ochs,*
    842 F.2d 515 (1st Cir. 1988) .............................................................. 12

*United States v. Perholtz,*
    842 F.2d 343 (D.C. Cir. 1988) ........................................................... 13

*United States v. Poirier,*
    321 F.3d 1024 (11th Cir. 2003) ..................................................... 14, 16

*United States v. Ragosta,*
    970 F.2d 1085 (2d Cir. 1992) ............................................................ 25

*United States v. Schultz,*
    333 F.3d 393 (2d Cir. 2003) ......................................................... 31, 32

*United States v. Scully,*
    877 F.3d 464 (2d Cir. 2017) .............................................................. 28

*United States v. Sekhar,*
    570 U.S. 729 (2013) ........................................................................ 10

*United States v. Silver,*
    864 F.3d 102 (2d Cir. 2017) .............................................................. 21

*United States v. Stewart,*
    907 F.3d 677 (2d Cir. 2018) .............................................................. 28

*United States v. Thorpe,*
    166 F.3d 1216 (6th Cir. 1998) ........................................................... 13

*United States v. Trapilo,*
    130 F.3d 547 (2d Cir. 1997) .............................................................. 25

*United States v. Valle*,
807 F.3d 508 (2d Cir. 2015) ................................................................. 17

*United States v. Von Barta*,
635 F.2d 999 (2d Cir. 1980) ................................................................. 25

*United States v. Walters*,
910 F.3d 11 (2d Cir. 2018) ................................................................... 13

*United States v. White*,
692 F.3d 235 (2d Cir. 2012) ................................................................. 32

*United States v. Young*,
998 F.3d 43 (2d Cir. 2021) ................................................................... 21

## Statutes and Rules

18 U.S.C. § 641 ..................................................................................... 6

18 U.S.C. § 1343. .................................................................................. 7

Fed. R. Evid. 401 ................................................................................ 29

Fed. R. Evid. 403 ................................................................................ 32

## Other Authorities

Restatement (Second) of Torts § 242 (Am. L. Inst. 1965) ................... 9, 10

## INTRODUCTION

This case reflects a misguided effort to stretch federal fraud to "criminalize[] traditionally civil matters and federalize[] traditionally state matters." *Ciminelli v. United States*, 598 U.S. 306, 316 (2023). The prosecution theory conflicts with the many Supreme Court decisions interpreting "property" narrowly. The information at issue had no economic value to OpenSea, and its purported misuse was not a scheme to defraud OpenSea of "property." The jury was deprived of the tools it needed to render a fair verdict through erroneous, misleading, and incomplete instructions and rulings improperly withholding important defense evidence.

Lacking a convincing rejoinder to all of this, the government resorts to an overbroad interpretation of property fraud, conspicuously ignoring the Supreme Court's clear and repeated rejections of this view, including in *Ciminelli*. The government misreads the controlling precedents and mischaracterizes the issues. Its disingenuous forfeiture claims should not distract the Court from the merits, to which the government has no persuasive responses.

## ARGUMENT

## I. CHASTAIN IS ENTITLED TO ACQUITTAL

Wire fraud requires proof that the defendant's object was to obtain "property." As the opening brief explains, to qualify as "property," "confidential business information" must have commercial value to the alleged victim, and the

victim must take affirmative steps to keep the information secret. Here, the government failed to prove either of these things. (OB21-37). As to commercial value, the government advocates an expansive reading of "property"—even though the Supreme Court has repeatedly insisted, most recently last Term in *Ciminelli*, on a narrow construction. As to confidentiality, the government ignores key evidence and conflates Chastain's state of mind with the separate (and objective) question of whether the information was OpenSea's "property."

### A. The Evidence Was Insufficient Because The Featured NFT Information Had No Commercial Value To OpenSea

*1. To Constitute "Property," Information Must Have Economic Value*

The government seeks to avoid a ruling on whether information must have commercial value to the victim, claiming Chastain forfeited any objection to the jury instructions. (GB23-24). That is sophistry. Chastain repeatedly pressed this argument below; the district court understood the argument and expressly rejected it. That fully preserved his instructional claim, as detailed *infra* in Point II.A.1. Regardless, the government concedes Chastain is entitled to plenary review of his sufficiency claim (GB34-35), and his general Rule 29 motion below (A-347-48, A-367-72, A-625) indisputably preserved his specific sufficiency claims for appeal, *United States v. Hoy*, 137 F.3d 726, 729 (2d Cir. 1998). The Court must therefore resolve this legal question to decide his sufficiency claim.

The government's merits argument fares no better. It contends *all* "business

information" is "property" under the wire fraud statute if the business keeps it "confidential," regardless of whether the information has "commercial value" to the business.  (GB14).  This is the same expansive view of fraud that led this Court astray in *Ciminelli*, *Percoco*,[1] and *Blaszczak I*[2]  because the Supreme Court interprets fraud—and the term "property" in particular—quite narrowly.

*Ciminelli*, the Court's most recent teaching on "property," is illustrative. The Court there reaffirmed that "property" is limited to interests "that had 'long been recognized as property' when the wire fraud statute was enacted."  598 U.S. at 314 (quoting *Carpenter v. United States*, 484 U.S. 19, 26 (1987)).  The Court rejected "right to control" because the doctrine was not grounded in "traditional property notions" and "no authority…established 'potentially valuable economic information' as a traditionally recognized property interest."  598 U.S. at 314. *Ciminelli*'s holding, the Court emphasized, followed a line of decisions dating back to *McNally*[3] in which it had "consistently rejected such federal fraud theories that 'stray from traditional concepts of property.'"  *Id.* at 314-15 (quoting *Cleveland v. United States*, 531 U.S. 12, 24 (2000)).

---

[1] *Percoco v. United States*, 598 U.S. 319 (2023).
[2] *United States v. Blaszczak*, 947 F.3d 19 (2d Cir. 2019), *vacated*, 141 S. Ct. 1040 (2021).
[3] *McNally v. United States*, 483 U.S. 350 (1987).

3

As the opening brief explains (OB22-26), *Carpenter* fits neatly within the *McNally-Ciminelli* rubric, because the information in *Carpenter*—news matter, literary property, unpublished writings—was among the narrow category of intangibles recognized as property at common law. It was, as the Court explained, the newspaper's "stock in trade"—in other words, the product it was selling. *Carpenter* also reiterates *McNally*'s touchstone of traditional property and cites trade secrets cases and other authorities focused on commercial value, confirming that the information at issue was "property" not simply because it was the paper's confidential information, but because it was *the type* of "confidential business information" that has "long been recognized as property." 484 U.S. at 26.

The government offers no authority suggesting a business can have a property interest in information lacking economic value to its owner. Nor does it attempt to explain why the Supreme Court would have spilled so much ink discussing the legal status of unpublished writings, trade secrets, and the like if it had concluded that *all* information a business possesses and keeps confidential is its "property." Instead, the government ignores *Ciminelli*, nitpicks *Carpenter* and *Blaszczak II*, leans heavily on *Grossman* and *Mahaffy*, and invokes common law sources addressing *tangible* property. These tactics do not withstand scrutiny.

4

a. *Carpenter*.

The government says *Carpenter* represented an "unqualified embrace of confidential business information as property" and held "it was 'sufficient that the [newspaper]…[was] deprived of its right to exclusive use of the information.'" (GB15 (quoting *Carpenter*, 484 U.S. at 26-27)). But the quoted language was not part of *Carpenter*'s "property" analysis. It was the Court's rationale for rejecting a separate argument "that a scheme to defraud requires a monetary loss." *Carpenter*, 484 U.S. at 26. The quoted passage did not suggest "exclusive use" was the test for whether confidential information is property, nor did it purport to define what sort of "confidential business information" qualifies as property. The government fails to identify anything in *Carpenter* suggesting "property" includes all confidential "information a company creates or acquires for a business purpose." (GB14).

The government's view that the ability to use information is the sine qua non of "property" also conflicts with *Ciminelli*. There, the Supreme Court held that the intangible right to "potentially valuable economic information" is not a traditional property interest, even if "useful for protecting and making use of one's property," because it would be wrong to "treat[] mere information as the protected interest." 598 U.S. at 314, 315 n.4.

5

b.   *Blaszczak II*.

The government would confine this Court's most recent decision addressing when information is property, *United States v. Blaszczak*, 56 F.4th 230 (2d Cir. 2022 ("*Blaszczak II*"), to its specific context: government regulatory information. (GB20-21).  But the opinion defies this miserly reading.  In *Blaszczak II*, this Court held that the essential characteristic necessary to prove a "traditional property interest" in confidential information is that the information has commercial value to its owner—akin to its "stock in trade"—such that its misappropriation could "direct[ly] impact [the owner's] fisc."  *Id.* at 243-44.  Under *Blaszczak II*, confidentiality alone does not convert an interest in information into one that "has long been recognized as property."  What is instead required is commercial value—information "gathered at the cost of enterprise, organization, skill, labor, and money, and…*distributed and sold to those who would pay money for it*."  *Id.* at 243 (quoting *Carpenter*, 484 U.S. at 26, emphasis in *Blaszczak II*).  What distinguishes information that is property from information that is not property is whether the information has commercial value or not, rather than whether the owner of the information is public or private.[4]

---

[4] *Blaszczak II*'s distinction of *United States v. Girard*, 601 F.2d 69 (2d Cir. 1979), does not support the government's argument (G24).  *Girard* involved "thing of value" in 18 U.S.C. § 641, a "term of art" with broad scope, *see generally United*

6

Indeed, it is unsurprising that *Blaszczak II* focused on whether information has economic value to its owner, because (splitting hairs (GB20n.4) aside) that was the exact distinction the government endorsed in its briefs.  For instance, the government argued that "confidential government information…typically must have economic value in the hands of the relevant government entity to constitute 'property.'"  Brief on Remand for the United States of America at 7, *United States v. Blaszczak*, Nos. 18-2811 et al. (2d Cir. April 2, 2021) (ECF No. 453).

c. *Grossman* and *Mahaffy.*

Contrary to the government's arguments (GB15-19), neither *Grossman* nor *Mahaffy* is inconsistent with the commercial value requirement.

The information in *Grossman* had actual commercial value to the victim. (OB28, 31).  As amicus explains, "confidentiality of client information is part and parcel of what a law firm sells" and is "integral to the transaction between law firm and client."  (NYCDLB18).  The law firm "could not commercially exploit the information by trading on it," *United States v. Grossman*, 843 F.2d 78, 86 (2d Cir. 1988), but that was because doing so would have violated its "duty of loyalty and confidentiality" to its client, *United States v. O'Hagan*, 521 U.S. 642, 655 n.7

---

*States v. Calk*, 87 F.4th 164, 182-83 (2d Cir. 2023), unlike "property" in § 1343.

(1997). It was not because the information lacked commercial value in the law firm's hands—the law firm was being paid to hold the information in confidence.

And the dicta in *United States v. Mahaffy* concerned only "whether the squawked information was confidential," not whether confidentiality determines whether business information constitutes property. 693 F.3d 113, 135 (2d Cir. 2012); (OB29-30). As the government admits, the passage at issue discussed defendants' request for an instruction about what the jury could consider "when evaluating whether the information was 'confidential.'" (GB18). In that context, *Mahaffy* observed that information need not be a trade secret to "qualify as confidential under *Carpenter*." 693 F.3d at 135. But that is obvious and squarely within *Carpenter*'s holding. *Mahaffy* had no reason to address, and did not resolve, the question here—whether information that is confidential, but is not the business's "stock in trade," qualifies as "property."

Nor did Chastain concede below that *Mahaffy* defined the scope of "confidential business information." (GB19). As the government admits elsewhere (GB19n.3, 36), the colloquy it cites (Tr.751-52) concerned *Mahaffy*'s factors for "evaluat[ing] whether employers treat information as confidential," 693 F.3d at 135 n.14, not whether the information was *property*.

8

Regardless, even if *Grossman* or *Mahaffy* actually meant what the government suggests, neither would survive *Ciminelli*, *Kelly v. United States,* 590 U.S. 391 (2020), or *Blaszczak II*.

    d.    The common law.

The government does not dispute that "property" in the fraud statutes is construed based on its common law meaning. Nor does it dispute that the common law protected only limited categories of intangible property or contest Chastain's description of relevant common law authorities. (OB25-26). Instead, the government resorts to inapposite citations concerning *tangible* property. *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998), and the Restatement (Second) of Torts chapters on conversion (cited GB22) only discuss tangible property rights. They do not address the scope of property rights in intangibles such as confidential business information.

Indeed, the Restatement chapter on conversion of "intangible rights" describes an entirely different regime and supports Chastain's argument. The Restatement explains that the only intangibles subject to conversion were promissory notes, bonds, bills of exchange, share certificates, warehouse receipts, insurance policies, savings bank books, and literary property. Restatement (Second) of Torts § 242, cmt. b & Reporter's Notes (Am. L. Inst. 1965). "As to other intangible rights," such as "idea[s]" and "confidential information," the

9

Restatement concludes, "it is generally agreed that there can be no conversion." *Id.* Thus, the government's position is refuted by its own citations.

      e.     Other cases.

      The government's other cases (GB19-20) are not controlling and undermine its argument, conflict with later Supreme Court decisions, or both. For instance, *United States v. Hedaithy*, 392 F.3d 580 (3d Cir. 2004), considered the Educational Testing Service's TOEFL exam and score reports. Both plainly had commercial value because they were what the testing company was selling to its customers. The information about the exam was property because "ETS is in the business of preparing and administering the TOEFL exam." *Id.* at 594. That is, the exam had commercial value because ETS charged customers to administer the test. Likewise, the score reports were "valuable" to ETS because they were "the sole physical embodiment of substantial and valuable services that ETS provides…in pursuit of a profit-seeking endeavor." *Id.* at 600. *Hedaithy* said property did not need to have "value in the hands of the victim," *id.* at 598 (quoted GB19), but that conflicts with *Cleveland* and *Kelly*. *See infra* at 14-15; *see also United States v. Sekhar*, 570 U.S. 729, 737 (2013) (under *Cleveland*, only a property interest in the "hands" of the victim qualifies).

f. Policy issues.

The government ignores the federalism and due process problems posed by its position that all information "created or acquired by a company for a business purpose" and kept confidential is its "property." (GB22-23n.5). This test provides no ascertainable standard and "leaves the statute's outer boundaries ambiguous." *Ciminelli*, 598 U.S. at 315 n.4. Indeed, a vast amount of confidential information has some "business purpose," but lacks the features of traditional property, as amicus's hypotheticals concerning the location of a company's headquarters or its plans to discontinue a product illustrate. (NYCDLB23). It is not difficult to conceive other examples. (*E.g.*, OB2). Such misuse of an employer's information may create civil liability or violate state law, but the wire fraud statute does not convert "deceptive actions traditionally left to state contract and tort law" into a federal crime. *Ciminelli*, 598 U.S. at 316.

At bottom, the government seeks to evade the limits the Supreme Court imposed in *McNally* and *Skilling*. Under *McNally*, a "breach of fiduciary duty, without more, does not constitute [property] fraud." *United States v. Mittelstaedt*, 31 F.3d 1208, 1219 (2d Cir. 1994). Under *Skilling v. United States*, the honest-services-fraud statute requires a bribe or kickback, and an employee's "undisclosed self-dealing" does not suffice. 561 U.S. 358, 409-10 (2010). Yet the government's theory would allow prosecutors to "simply…recharacterize every

11

breach of fiduciary duty" involving secret business information as property fraud, "let[ting] in through the back door the very prosecution theory that the Supreme Court tossed out the front." *United States v. Ochs*, 842 F.2d 515, 527 (1st Cir. 1988).

The government ignores these issues, instead complaining that the commercial value requirement "dramatically narrow[s] the wire fraud statute." (GB22). But that is exactly what the Supreme Court keeps telling lower courts to do—read the statute narrowly. From *McNally* to *Ciminelli*, the Court has repeatedly rebuffed prosecutors' efforts to stretch the fraud statutes beyond the limits imposed by their text, structure, and history. As *Kelly* explains: "The evidence the jury heard no doubt shows wrongdoing—deception, corruption, abuse of power. But the federal fraud statutes…do not criminalize all such conduct." 590 U.S. at 393.

In any event, the government's parade of horribles (GB22) is illusory. The conduct it mentions is criminal regardless of the outcome here. Stealing "nonpublic information about a merger or acquisition" or an "earnings announcement" or "press release" to trade securities is criminal under Title 15, which has no "money or property" element. *See, e.g., O'Hagan*, 521 U.S. 642. Indeed, in the cases the government cites, the defendants were convicted under both Title 15 and Title 18. *See United States v. Newman*, 664 F.2d 12 (2d Cir.

12

1981); *United States v. Walters*, 910 F.3d 11 (2d Cir. 2018); *United States v. Khalupsky*, 5 F.4th 279 (2d Cir. 2021). Nor does the commercial value requirement insulate misappropriation of "confidential information about bidding on a project" from prosecution. Such bid-rigging schemes are property fraud where they cost the victim *money* (not just information), and honest-services fraud where a kickback is paid. Again, the cited cases illustrate this point. *See United States v. Thorpe*, 166 F.3d 1216 (6th Cir. 1998); *United States v. Perholtz*, 842 F.2d 343 (D.C. Cir. 1988).

## 2. *The Featured NFT Information Lacked Commercial Value*

The government did not even attempt to prove commercial value below. That should end the matter, because this Court "cannot affirm a criminal conviction on the basis of a theory not presented to the jury." *Chiarella v. United States*, 445 U.S. 222, 236 (1980); *Ciminelli*, 598 U.S. at 317. Regardless, none of the government's belated claims of commercial value would satisfy the requirement.

First, possible reputational harm stemming from misuse of the information (GB26-27) is too "ethereal," *Carpenter*, 484 U.S. at 25, to show the information was commercially valuable. The speculative nature of the cited testimony illustrates this. (GB26-27 (misuse "could compromise OpenSea's brand" and public would "probably lose trust")). The government presented no evidence of

13

actual reputational harm.[5]  By contrast, the reputational concerns in *Grossman*

were concretely related to the information.  Its misuse directly undermined the law

firm's commercial obligation to its client.  Here, by contrast, OpenSea's

reputational concerns are "intangible interests unconnected to" the information.

*Ciminelli*, 598 U.S. at 313.  Even if such interests could satisfy the property

element, potential harm to OpenSea's reputation would be a "byproduct of" the

alleged scheme, not its object.  *See Kelly*, 590 U.S. at 402 n.2.[6]

Second, the argument that OpenSea could have sold access to the

promotional area of its website (GB27) is a non-sequitur.  That wasn't its business

model.  (OB7-8, 30).  The witnesses testified it made *no* difference to OpenSea

which NFT Chastain selected to feature.  (A-305).  OpenSea *could have* charged

for advertising on its website, but that has no bearing on whether Chastain's

decision about which NFT to feature was commercially valuable.  Nor is it

sufficient to establish a property interest.  In *Cleveland*, the video poker license

_____

[5] Nor could it have.  The company's value increased nearly tenfold between July
2021 and January 2022, and was $13.3 *billion* just a few months after Chastain
resigned.  *See* https://finance.yahoo.com/news/nft-marketplace-opensea-valued-13-
015208069.html.
[6] The government's other cases involve concrete economic harm, not mere
reputational concerns.  *See United States v. Hager*, 879 F.3d 550, 554 (5th Cir.
2018) (information necessary "to maintain a specific profit margin"); *Belt v.
United States*, 868 F.2d 1208, 1213 (11th Cir. 1989) (scheme "made the bids
submitted higher than they normally would have been," causing "excessive
charges"); *United States v. Poirier*, 321 F.3d 1024 (11th Cir. 2003) (similar).

was not Louisiana's property, because Louisiana "d[id] not conduct gaming operations" or "hold video poker licenses to reserve that prerogative," even though it *could have* done so.  531 U.S. at 23.  Likewise, here OpenSea did not sell information about which NFTs to feature, so this information was not traditional property.

Finally, Chastain's profit (GB27) does not prove OpenSea had a property interest in the information.  "[A] separate and identifiable property interest must also be established."  *United States v. Miller*, 997 F.2d 1010, 1019 (2d Cir. 1993) (rejecting "constructive trust" theory of fraud).  "It does not suffice…that the object of the fraud may become property in the recipient's hands…the thing obtained must be property in the hands of [OpenSea]."  *Cleveland*, 531 U.S. at 15.

## B. The Evidence Was Insufficient Because OpenSea Did Not Take Affirmative Steps To Keep The Information Confidential

The government also failed to prove OpenSea considered and treated the information as confidential.  Its only evidence of any "affirmative steps," *Mahaffy*, 693 F.3d at 135 n.14, was the template confidentiality agreement that did not mention NFTs.  Atallah did not even remember reading this "umbrella agreement" (GB37), which is insufficient, and the government ignores precedent involving more detailed policies that specified the relevant information was confidential. (OB34); *see also Hager*, 879 F.3d at 552 ("employee manual expressly designate[d] [the particular] information…as confidential."); *United States v.*

15

*Martin*, 228 F.3d 1, 6 (1st Cir. 2000) ("non-disclosure and non-competition agreements" and "ethics and business conduct" policy specifically prohibited disclosure); *United States v. Czubinski*, 106 F.3d 1069, 1071 & n.1 (1st Cir. 1997) (multiple specific rules and codes of conduct directly addressed information); *Poirier*, 321 F.3d at 1032 (policy "unequivocally stated" specific information was confidential).

The government admits it was only "[a]fter Chastain's resignation" that OpenSea "announced additional policies…that made clear that it considered [its] plans to feature or promote an NFT" to be confidential. (GB7). No such policies existed before Chastain resigned. The government also acknowledges that Finzer "hadn't thought explicitly about whether [the featured NFT selection] was confidential information" covered by the agreement. (GB37 (quoting A-305)). If OpenSea's CEO didn't even consider whether the information was confidential, no reasonable jury could find beyond a reasonable doubt that the company took affirmative steps to keep that information confidential. Indeed, this jury's note made clear it did *not* believe Finzer viewed the information as confidential (OB42, 49) and did *not* "reject[]" Chastain's "arguments" (GB38) that the Clerky template didn't prove confidentiality.

The government ignores that before Chastain resigned, OpenSea had no trainings, discussions, or other compliance-related functions addressing

confidentiality. It also ignores that Atallah himself traded NFTs in violation of OpenSea's policies.

The government falls back on Chastain's own words and actions. (GB39). But *Carpenter* requires proof that "*employers* 'consider' information to be confidential." *Mahaffy*, 693 F.3d at 135 n.14 (emphasis added). Here the evidence was equivocal, and the jury only found confidentiality because of the court's erroneous answer to its question about how confidentiality could be established. *See* Point II.B, *infra*. Such equivocal proof is insufficient to sustain a conviction. *See*, *e.g.*, *United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015); *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008).

## C.     The Government Failed To Prove Intent To Defraud

The government acknowledges it must also demonstrate that Chastain "contemplated or intended some harm to the property rights of the victim." (GB40). Because the evidence was insufficient to prove the "property" element, it was necessarily insufficient to establish that Chastain intended to harm OpenSea's property rights.

Moreover, "intentional[] trad[ing] on OpenSea's confidential information" does not prove intent to defraud. Such trading cannot establish the requisite intent because, "[w]here the scheme does not cause injury to the alleged victim as its necessary result"—as here—"the government must produce evidence independent

17

of the alleged scheme to show the defendant's fraudulent intent." *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994). The government cites no such evidence, as none exists.

## II. FLAWED JURY INSTRUCTIONS REQUIRE A NEW TRIAL

### A. The District Court Erroneously Instructed The Jury That Commercial Value Was Not Required

*1. Chastain Preserved His Objection*

The government's contention that Chastain never argued below that "information must be *commercially* valuable to its owner" (GB23) is utterly false.

Chastain first raised the issue in motion to dismiss briefing. (*See* Dkts. 19, 20, 25). He argued that the wire fraud count should be dismissed because it relied on the "erroneous position that an employer has a property interest in information that has no inherent economic or market value." (Dkt. 19 at 2). He contended the information was a "marketing concept" having "no determinable economic or saleable value" (*id.* at 2-3), and no "*commercial value* to [OpenSea]" (*id.* at 15 (emphasis added)). Chastain also mentioned "economic value," "[i]nherent economic value," and "determinable market value" (*id.* at 16), but the nomenclature is interchangeable, and obviously he was arguing that the information was "commercially valueless" (*id.* at 19). Chastain also argued that because the NFT information was "not the 'stock in trade' of OpenSea," it had no "inherent commercial and/or market value." (Dkt. 25 at 6). Amicus reiterated

these arguments.  (*See* Dkt. 20 at 4 (OpenSea did not "assign commercial value to such information," so it is "not OpenSea's 'property'"), at 6 (test is "whether the information has commercial value to the employer")).  And the government clearly understood Chastain was raising this argument.  (Dkt. 23 at 17 ("Chastain argues that only information that is 'stock in trade' or capable of being sold can be 'property.'")).

The district court did not decide whether "commercial value" is required until in limine motions concerning expert testimony about whether the information was valuable.  (*See* Dkts. 58, 63; SPA-7-15).  At that time, Chastain reiterated his position, again using phrases like "economic value," "inherent economic value," "inherent market value" (Dkt. 58), and "commercial value"—contrasted with the government's proposed "absence-of-value rule" (Dkt. 63).

The district court expressly rejected Chastain's arguments.  In a written decision, it concluded confidential business information need not have "inherent economic value" to its owner (SPA-8) and that *Grossman* and *Mahaffy*'s discussions of "commercial value" resolved the issue (SPA-10-11).  The court instructed the parties to "file revised…proposed jury instructions" "[i]n light of [its] analysis."  (SPA-27).

 Chastain's initial request to charge referred to "inherent value" and incorporated *Carpenter*'s "stock in trade" language, which encompasses the

commercial value argument pressed here. (OB38-39; A-40). That request was supported by citations to Chastain's prior motions arguing that commercial value was required. (A-40-42). Chastain preserved these arguments in his revised requests. (A-74).

Chastain's repeated arguments concerning the "commercial value" requirement were plainly "sufficient to direct the district court to his contention" and preserve his appellate claim. *United States v. Masotto*, 73 F.3d 1233, 1238 (2d Cir. 1996). "As the cited…[filings] indicate[], the substance of the claim now being raised on appeal was squarely raised below." *United States v. Hassan*, 578 F.3d 108, 129 (2d Cir. 2008). Chastain "made explicitly clear his disagreement with the court's view of the law," and "[i]t would have been superfluous…for counsel to have [further] specified the particulars in which the court's instructions diverged from counsel's view of the governing law." *United States v. Dinome*, 86 F.3d 277, 282 (2d Cir. 1996).

Nor are magic words required. The purpose of the contemporaneous objection rule is not to allow appellees to play gotcha. It is to allow trial courts to consider issues in the first instance and correct errors. As the district court's motion in limine decision and mention of "economic value" in its final instruction[7]

---

[7] The court's instruction—over Chastain's objection (A-386-87)—stated that the jury "*may*…consider whether the information had economic value to the employer,

demonstrate, the court clearly "passed on" the argument below.  *United States v. Young*, 998 F.3d 43, 52 n.2 (2d Cir. 2021) (argument preserved when "passed on by the district court").

### 2.  The Property Instruction Was Erroneous

As Point I.A explains, the property instruction misstated the law, and the government failed to prove the information had commercial value to OpenSea.  At a minimum, a new trial is required because it is not "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *United States v. Silver*, 864 F.3d 102, 119 (2d Cir. 2017).

## B.  The District Court's Response To Jury Note Three Misstated The Law

The government mischaracterizes the supplemental instruction issue and the history of the court's rulings on other employees' views regarding confidentiality.

The jury did not ask whether "it could find the information confidential if Finzer did not."  (GB54-55).  The jury asked: "if the defendant viewed the information as confidential but Devin Finzer, the other signatory to the confidentiality agreement, did not, is that enough to consider it confidential?"  (A-448).  The jury was not asking whether Finzer's view was *dispositive*, to the

_____

but the government *is not required to prove* that the information had such value." (A-413) (emphasis added).

exclusion of any other factors. It was asking whether it was *sufficient* if Chastain viewed the information as confidential but Finzer did not. As explained (OB42-49), the correct answer to that question was no, and the instruction the court gave over Chastain's objection was legally incorrect, incomplete, and misleading.[8]

The government contends the jury was "permitted to consider whether Chastain's understanding…had any bearing on whether OpenSea, his employer, considered the relevant information confidential" and that "how an employee…treats information…is probative of how the employer treats the information." (GB56-57).[9] That could be true in some cases, but it conflates "considered" and "treated" and does not address the jury's question here: as between Chastain and the CEO, was Chastain's subjective view "enough" (A-448) "proof that the information was both considered and treated by [OpenSea]" as confidential, *Mahaffy*, 693 F.3d at 135 n.14. It plainly was not.

As for agency law, a CEO's view—versus that of an employee—is clearly dispositive. Finzer signed the agreement for OpenSea. If he did not consider the information confidential, it wouldn't matter what Chastain—or other employees—

---

[8] If "no" was an insufficient response, the court should have adopted Chastain's fallback and instructed that "[t]he defendant's opinions are not relevant to the inquiry," which was also legally correct. (A-144, A-154, A-482).

[9] *Mahaffy* vacated convictions based on *Brady* information about high-level "firm representatives" (OB46), not peer employees (GB56).

believed.  Any other view is nonsensical.  It would permit a jury to find fraudulent misappropriation of information by an employee even if the employer didn't treat the information as its property.

The government also ignores that the court had already ruled in limine, twice, that Finzer's and Atallah's views controlled "because they were the principals of the company" and "what they were thinking and how they considered the information and understood the agreement" was relevant.  (A-382-83).  And the court found testimony of other employees "[in]admissible with respect to OpenSea's state of mind."  (A-383).  The government thus misstates the record when suggesting "Chastain was still permitted to ask employees about whether they believed OpenSea treated the information confidentially."  (GB43).  As the government admits, the court had held that "how *other* employees interpreted or understood the rules [was] irrelevant and improper opinion testimony."  (GB42).

By not answering the question the jury actually asked, the court tilted the scales against Chastain.  Worse, the court provided the jury with factors suggesting Chastain's subjective views could control: (i) "a company can act only through its officers, *employees*, and corporate materials"; and (ii) "you may consider the conduct and testimony of Mr. Finzer, as an officer of the company, as well as *any other evidence* that relates to the issue, including how *employees* at OpenSea treated the information within the scope of their employment and *any other*

*evidence relevant* to the factors referenced above." (A-486) (emphasis added).

The instruction did nothing to clarify the jury's confusion and "only point[ed] towards how guilt is proved." *United States v. Dove*, 916 F.2d 41, 46 (2d Cir. 1990).

### C. The Instructions Misstated The Law Of Fraud

#### 1. *Chastain Preserved His Objection*

The government makes another meritless preservation argument as to the overbroad scheme to defraud instruction. Chastain objected to the government's proposed charge—which the district court ultimately adopted—because it would permit conviction "based solely on unethical workplace behavior." (A-133). He reiterated at the charge conference that the jury should not be "instructed on departing from traditional notions of fundamental honesty and fair play in the general and business life of society" because "this is not consistent with *Kelly* and *Cleveland*." (A-385). That is the same argument raised here.

#### 2. *The Fraud Instruction Was Erroneous*

The government fails to identify a single case where the challenged fraud instruction was used in this circuit or approved by this Court. Instead, the government cites various irrelevant cases. (GB29). These cases do not consider or bless jury instructions containing the same vague allusion to "honesty, moral uprightness," and so on. Some of them mention this language in passing, but it

derives from a 1958 Fifth Circuit case superseded by *McNally* and the more recent *Cleveland*, *Kelly*, and *Ciminelli* decisions limiting the scope of federal fraud.

For instance, *United States v. Trapilo*, 130 F.3d 547 (2d Cir. 1997), and *United States v. Von Barta*, 635 F.2d 999 (2d Cir. 1980), reverse dismissals of fraud indictments. They quote in passing the language from *Gregory v. United States*, 253 F.2d 104 (5th Cir. 1958), incorporated into the erroneous instruction given at Chastain's trial, but they do not endorse *Gregory*'s formulation. Another cited case mentions the *Gregory* language in dicta, quoting *United States v. Goldblatt*, 813 F.2d 619 (3d Cir. 1987), which has been disavowed by the Third Circuit after *United States v. Leahy*, 445 F.3d 634 (3d Cir. 2006). *See United States v. Ragosta*, 970 F.2d 1085, 1090 (2d Cir. 1992). And the jury instructions in *Ragosta* and *United States v. Gatto*, 986 F.3d 104 (2d Cir. 2021), did not even use the challenged language. They stated, "to defraud means to wrong one in his or her property rights by dishonest methods or schemes and usually signifies the deprivation of something of value by trick, deceipt [sic], chicanery, or overreaching." *Ragosta*, 970 F.2d at 1088 n.1; *accord United States v. Gatto*, 17-cr-686 (LAK), Tr. 1837 (S.D.N.Y. 2019).

The government otherwise ignores that the overbroad fraud definition infected the charge as a whole because it provided the jury too vague a metric to judge key elements—whether a scheme to defraud existed, and whether Chastain

25

acted knowingly and with intent to defraud.  The separate tautological instruction that fraud includes "fraudulent[] embezzl[ement] or fraudulent misappropriat[ion]" did not cure the error, but left the jury free to convict on the misunderstanding that merely unethical or unfair conduct is synonymous with fraud.  *See Ciminelli*, 598 U.S. at 316 (fraud statutes should not be used to "regulat[e]…ethics (or [the] lack thereof)").

### D. Omitting Materiality Was Plain Error

The government's materiality argument confirms its overreach in this case and underscores why the failure to instruct on materiality was plain error.  The government argues, erroneously, that the holding of *Neder v. United States*, 527 U.S. 1 (1999), that "materiality of falsehood" is an element of wire fraud, "does not readily apply to an embezzlement scheme."  (GB31-32).  Indeed, the government has conceded that omitting materiality was instructional error in a different fraud case charging misappropriation of information.  *See United States v. Middendorf*, No. 18-CR-36 (JPO), ECF No. 353 at 61 (S.D.N.Y. May 29, 2019).

The government was correct in *Middendorf*.  "[T]he common law could not have conceived of 'fraud' without proof of materiality," *Neder*, 527 U.S. at 22, even if the scheme involves embezzlement.  *Neder* explicitly addressed this issue, explaining that although the fraud statutes expressly cover conduct beyond

common law "false pretenses," the statutes do not encompass "more than common-law fraud," which required material falsehood. *Id.* at 24.

The government misunderstands why theft can—in some circumstances—be fraudulent. What makes misappropriation fraudulent embezzlement is a fiduciary's "*undisclosed* misappropriation…in violation of a fiduciary duty." *O'Hagan*, 521 U.S. at 654 (emphasis added); *id.* at 656 ("the fiduciary's fraud is consummated…when, *without disclosure*…he uses the information") (emphasis added). But the information withheld must be material. *Cf. U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 663 (2d Cir. 2016). The district court should have instructed that only material misrepresentations, or omissions in the face of a duty to disclose, are fraudulent.

Because the evidence was insufficient to prove that OpenSea considered and treated the information as confidential, *see* Point I.B, it is not clear beyond a reasonable doubt that a rational jury would have found Chastain's undisclosed use of the information material. *See United States v. Nouri*, 711 F.3d 129, 140 (2d Cir. 2013). Omitting a materiality charge thus constituted plain error.

## III. THE ERRONEOUS EXCLUSION OF CRITICAL DEFENSE EVIDENCE REQUIRES A NEW TRIAL

The government trots out the usual platitudes about deference, implying that no challenge to an evidentiary ruling can ever succeed. (GB41-42). But it ignores that an "error of law" is always an abuse of discretion, *Koons v. United*

*States*, 518 U.S. 81, 100 (1996); that relevance is a "low threshold, easily satisfied," *United States v. Gramins*, 939 F.3d 429, 450 (2d Cir. 2019); and that convictions are reversed where key defense evidence is erroneously excluded, *see, e.g.*, *United States v. Stewart*, 907 F.3d 677 (2d Cir. 2018); *United States v. Scully*, 877 F.3d 464 (2d Cir. 2017); *United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015). The challenged rulings were legally wrong, withheld important exculpatory evidence from the jury, and deprived Chastain of a fair trial.

### A. Evidence That Chastain's Peers Did Not Believe The Information Was Confidential Was Erroneously Excluded

#### 1. *The Evidence Was Relevant*

Contrary to the government's arguments, Chastain was not seeking to "substitute" other employees' views "for his own mental state" (GB43) or argue that their beliefs could be "imputed" to him (GB44). He sought to introduce this evidence for purposes approved in *Litvak*: as circumstantial evidence corroborating his good faith and his argument that he did not violate any clear company policy. The evidence was plainly probative of these defenses, because if Chastain's peer employees were confused by the scope of the confidentiality agreement and did not believe it addressed featured NFT information, that would have negated the government's theory that Chastain must have known.

The text message from Phan stating "[OpenSea] didn't have policies" relating to purchasing featured NFTs (A-605), for example, was crucial evidence.

28

But Chastain was precluded from questioning Phan on her understanding. The government now downplays the message's significance. (GB46). As it admitted below, however, the message "was a reference to OpenSea not having policies relating to…purchasing featured works at the time" (Dkt. 70 at 13)—a dispositive issue bearing on property and intent, satisfying Rule 401's "low" relevance bar.

The government says Chastain could have testified to his own understandings of the policies. This is not a serious argument. Juries do not take criminal defendants at their word. That a defendant can testify does not strip him of his right to introduce relevant, admissible evidence to corroborate his defense.

Nor was substitute questioning on these subjects sufficient to cure the error, as the government suggests (GB45-46). For example, the court excluded questioning about a Viau tweet suggesting OpenSea employees could use company information for personal benefit. (A-377-83; *see* A-623). Chastain was not even permitted to ask Viau if he ever purchased NFTs through OpenSea. (A-350). Nor was he permitted to ask Finzer why he might have purchased NFTs. (A-326). And although Atallah was questioned about personal NFT trading that violated a policy promulgated *after* Chastain's transactions (OB15), the court erroneously excluded

evidence that Finzer misappropriated company information *during the relevant time frame*.  (OB61-62).[10]

### 2.  The Evidence Was Not Improper Lay Opinion

Chastain did not seek to introduce improper lay opinions about the *legal* meaning of the confidentiality agreement.  Rather, he proffered evidence of other percipient witnesses' beliefs and understandings, to illustrate why he would not have understood the agreement to prohibit his conduct, and why it did not reflect any "affirmative step" by OpenSea to keep the information confidential.

The government confuses the issues.  It cites inapposite cases addressing legal opinions on things like the "correct interpretation of a contract" (GB45), but, like the district court, disregards that where "a witness's own belief…is relevant…, testimony about [the witness's] own subjective belief may be admissible." *Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010).  Indeed, this can, in cases like this one, include lay opinions about the relevant legal landscape.  In *United States v. Schultz*, for example, this Court held that testimony from the defendant's employees and colleagues as to their understanding of the law was admissible to prove what "someone with the defendant's… background…probably

---

[10] This evidence also refutes the government's attempt to distinguish *Litvak* by claiming "there was no evidence that OpenSea's co-founders were aware of… employees trading on the company's confidential information."  (GB44).

would know." 333 F.3d 393, 416 (2d Cir. 2003). Just as that evidence went "directly to the plausibility of [a] defense," *id.*, Chastain's proffered evidence went directly to the plausibility of his good faith and his argument that OpenSea did not consider or treat the information as confidential.

### B. The Redline Showing OpenSea Made No Material Changes To The Clerky Template Was Erroneously Excluded

*Mahaffy* states that "[i]f employers 'consider' information to be confidential but do not really take affirmative steps to treat it as such and maintain exclusivity, *Carpenter* is not satisfied." 693 F.3d at 135 n.14. *Mahaffy* also indicates "[t]he pertinent factors will, of course, vary from case to case." *Id.* That OpenSea adopted a template confidentiality agreement without any company-specific substantive changes tended to show a lack of any affirmative steps.

The government cannot seriously contend Atallah "was not wrong" in stating OpenSea made modifications "to customize the template." (GB48). The only change was the company's name and legal jurisdiction. (A-606). Permitting Chastain to confront Atallah on this issue would have aided the jury's assessment of Atallah's credibility. This would not have wasted time or caused any conceivable jury confusion. (GB48).

### C. Evidence That OpenSea's CEO Did Not View Similar Information As OpenSea's "Property" Was Erroneously Excluded

The government ignores the chain of inferences outlined in Chastain's opening brief demonstrating why Finzer's MATIC trading was clearly relevant. (OB63). It doesn't matter that Finzer's own misappropriation concerned other information and "would not have resolved whether information about featured NFTs was confidential" (GB51), because "[e]vidence need not be conclusive in order to be relevant," and "[n]onconclusive evidence should still be admitted if it makes a proposition more probable than not." *Schultz*, 333 F.3d at 416. Moreover, the evidence would have clearly impeached Finzer's credibility, which is always relevant.

Because the district court disregarded the evidence's probative value, its Rule 403 balancing warrants no deference. *United States v. White*, 692 F.3d 235, 247 (2d Cir. 2012). And the evidence concerned the dispositive issue and presented no risk of unfair prejudice or confusion. In concluding otherwise, the district court committed a legal error by deeming the evidence unfair because it would make Finzer "look bad." (A-331). That is not the test, but the government ignores this error.

\*     \*     \*

The government claims the evidence was "overwhelming" (GB51), but it always says that, and here it fails to muster any record support for that

32

disingenuous argument. This case was very close. The jury deliberated for almost as long as it heard evidence, deadlocked, and only reached a verdict after a flurry of notes, including one showing it didn't think OpenSea's CEO believed the featured NFT information was confidential. Whether considered individually or cumulatively, the instructional and evidentiary errors deprived Chastain of a fair trial.

## <u>CONCLUSION</u>

The judgment should be reversed and remanded with instructions to enter a judgment of acquittal, or vacated and remanded for a new trial.


Dated:    New York, New York
          May 28, 2024

                                        /s/Alexandra A.E. Shapiro
                                        Alexandra A.E. Shapiro
                                        Jason A. Driscoll
                                        SHAPIRO ARATO BACH LLP
                                        1140 Ave of the Americas, 17th Floor
                                        New York, New York 10036
                                        (212) 257-4880

                                        David I. Miller
                                        Daniel P. Filor
                                        GREENBERG TRAURIG, LLP
                                        One Vanderbilt Avenue
                                        New York, New York 10017
                                        (212) 801-9200

                                        *Attorneys for Defendant-Appellant*
                                        *Nathaniel Chastain*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS AND
TYPE STYLE REQUIREMENTS**

1. The undersigned counsel of record for Defendant-Appellant Nathaniel Chastain certifies pursuant to Federal Rule of Appellate Procedure 32(g) and Local Rule 32.1 that the foregoing brief contains 6,996 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), according to the Word Count feature of Microsoft Word 2024.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2024 in 14-point font of Times New Roman.

Dated:   May 28, 2024

/s/Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
